The next case is Harrison Garcia v. United States. Ben Kuhn is here for the appellate Garcia. Lisa Hurst is here for the government. Mr. Kuhn, you may begin when you're ready. Good morning, your honors. May it please the court. Ben Kuhn, counsel for Harrison Garcia, convicted of drug and firearms charges, now serving a 30-year sentence with a 25-year mandatory minimum. His convictions and sentence were affirmed on appeal by this court, and he filed a post-conviction motion, 2255, that district judge cites conducted a two-day evidentiary hearing. On appeal, we are challenging the conclusion of the district judge denying post-conviction relief with a certificate of appealability, primarily challenging the and conclusions with regard to the propriety of the mid-trial plea offer being not fully conveyed to Mr. Garcia and not resulting in an effective plea or effective rejection of that plea. We've raised a number of other issues on appeal, including a due process denial of the and attend the witnesses who would have established that Mr. Garcia did, in fact, kindly and unequivocally raise and invoke his right to counsel prior to statements and prior to a consent and a challenge to the consent. With regard to the ineffective assistance regarding rejection of a mid-trial plea offer, the district judge was comprehensive in her conclusions. This issue was subject to the evidentiary hearing. It was the only issue subject to the evidentiary hearing. Is my understanding correct about that? Your honor is correct that the of the motion to vacate was based on the submissions. And so who were the witnesses at that hearing now? Which witnesses testified at that hearing? The witnesses who testified were the trial, the pre-trial lawyer, Mr. Mastos, Ms. Munoz, J.C. Elso, a legal assistant, Gustavo Lage, the trial lawyer, and the trial prosecutor, Mr. Osborne, who testified in the proceedings. And their testimony is summarized in the brief. Their testimony was that the offer, the tenure offer, was conveyed to Mr. Garcia, right? Yes, sir. And so the court credited that testimony over Mr. Garcia's claim and found his testimony incredible and not believable. And so why isn't that determination entitled to deference? Your honor, in fairness to the district judge, her determination was based on a, she viewed it as Mr. Garcia having given conflicting testimony. He did agree that the lawyers had informed him of a mid-trial plea. The circumstances of the plea, a little bit uncertain for him, but given the undisputed testimony that there was a 15-minute discussion mid-trial, that is understandable. But what Mr. Garcia did testify to, and the record provides abundant support for the evidentiary foundation, is that the contours of that plea were not adequately addressed to Mr. Garcia and it came with the rubrics of how that plea compared to prior rejected pleas. And in this regard, your honor, Mr. Garcia did acknowledge having had communications with Mr. Lage, brief as they were, was aware that there was a mid-trial plea offer and offered his testimony that because of the counsel from his lawyers' cumulative, he determined that the plea offer should be rejected, not because he steadfast was not guilty of the case. And we note in the brief, your honor, that at sentencing, he did make a significant acknowledgement of his responsibility, but also because the plea offer did not include, as explained by the lawyers, the determination of mandatories that may or may not apply and how the charging and the proof of trial would be undercut by a favorable 10-year plea offer. Under the circumstances, the district judge made some determinations, but what is plain from a reading of the record, and the district judge conducted a thorough two-day evidentiary hearing, and evidentiaries are not common in post-conviction motions, but the district judge was concerned about that issue and a couple other issues that warranted an evidentiary consideration and juxtaposed essentially against the trial Could not recall offering a mid-trial plea. You're talking about Mr. Osborne? Yes, your honor, the trial prosecutor. Did Mr. Lag testify that he, in discussing it with Mr. Garcia, that Mr. Garcia told him that his spiritual advisor had told him that he was going to win this case, and Mr. Lag advised Mr. Garcia that he didn't agree with the spiritual advisor, and quote, there was evidence and there are no guarantees, and if you lose, you're going to lose big. Wasn't that the testimony in front of Judge Sykes? I think your honor has quoted his testimony quite accurately. That's what Mr. Lag testified to. That was part of the 15-minute agreement that it was a brief colloquy during the course of the trial. Mr. Garcia adamantly, absolutely denied any such discussion about a spiritual advisor, made clear he did not have a spiritual advisor, there was no spiritual advisor. This goes back to Judge Wilson's question, which is, isn't the district court judge entitled to deference? This is a credibility determination. She had these witnesses in front of her, and she made a decision that she found her client not credible. Absolutely, Judge, but that, your honor, that is not the complete analysis. What Mr. Lag said he advised, excuse me, advised Mr. Garcia is not a sufficient display of what the plea offer was sufficient for Mr. Garcia to be able to make a determination, and there were some significant aspects of the plea offer that Mr. Garcia, the prior lawyers made clear, were quite impactful. One, this was not a cooperation plea offer, and the testimony was the pre-trial plea offer, which was much more significant. 15 to 20 years included cooperation, not acceptance of responsibility, but cooperation, something Mr. Garcia said he was not going to do, and additionally, this plea included a determination of no consecutive sentence issue that was frankly the reason for the litigation, and third, your honor, the plea offer included a at least an estimate of what the actual impact of the sentence would be under the seven to ten year proposal, which would have been two to four years in prison, not discussed in any analytical framework with the trial lawyer, things that are in here directly to what information a defendant needs to have to be able to make a credible, a valuable, a meaningful decision, but what the district judge did was juxtapose those two obligations by essentially concluding that the trial prosecutor did not have the authority to make an offer if the trial prosecutor did, because an offer would be contingent on approval by the senior echelon in the office. Presuming that is an accurate portrayal of the U.S. attorney's process of offering mid-trial pleas, it does not change the analysis for any pleas, because always the United States attorney's office has to sign off on a plea, and plea discussions begin with, prior to the execution of a plea agreement or the defendant coming forward to the judge to be questioned, a discussion with the lawyer and the prosecutor. What are the terms, and what do these terms mean? If I can interrupt you. Of course, judge. The two minutes that you have left, you've got several other issues here, and there's one other issue that I have a concern about that I want the government to address when, during its term at the podium. Do we know these other witnesses who would have testified that your client did not waive his Miranda rights? Tell me who these witnesses were and what they would have said. Yes, your honor. The issue on this is very simple. Did Mr. Garcia waive his rights? And Agent Sliazes is the only witness who testified, and he, by the way, was not the agent who was continuously present with Mr. Garcia. And we have asserted in the motion that a number of witnesses were present, were aware of all the discussions, were there during the entire time that Mr. Garcia was apprehended and brought into the house. And by the way, Agent Sliazes admitted he, or made the prosecutor admitted Sliazes committed unwitting perjury by saying Mr. Garcia did not go into the house. But Norellas Garcia, Rudolph Rawlings, and Omolulu, known as Lulu Okonolu, were present and would have testified. But for the suppression hearing, the defense lawyer had 24 hours to bring those witnesses to trial. The trial judge, the district judge commented that, well, there's no showing that Norellas Garcia, if she had been subpoenaed and brought to the suppression hearing, would have testified because at trial she invoked her Fifth Amendment privilege. Understood. Except that there was no effort to bring her to the hearing, and the narrow issue of did he invoke his right to counsel, did he ask for a lawyer, was completely independent of any involvement she had in underlying criminality. May I ask you a question? Why did they not testify at the 2255 hearing before Judge Sites? Tell me that again, Judge. Why did they not testify before Judge Sites? Did Judge Sites just schedule for a particular area that you wanted to focus on? Yes, Your Honor. The evidentiary hearing focused on the, as I mentioned to Judge Wilson, the plea agreement issue. The lawyers came in, and that was a very fully formed hearing. The rest of it was on paper, as to do with paper and the presentation. And the judge, by the way, did not make a determination in the order that there was any deficiency in the presentation of those items, Your Honor. For all those reasons, we ask, as I do in the brief, that the court consider vacating the convictions, ordering a fully formed evidentiary hearing if the issue of waiver and invocation of counsel requires factual determinations. Thank you, Your Honors. Thank you, Mr. Cooney. We'll hear from Ms. Hirsch. Good morning. May it please the court, Lisa Hirsch on behalf of the United States. First, I'll address the mid-trial plea offer, which as counsel has noted, the judge did a comprehensive order and a comprehensive hearing. There were a number of witnesses who testified both on behalf of the defense and on behalf of the government. And the court found, she credited the prosecutor's testimony, first that there, he had no recollection of a plea offer having been made, and then went on to address prejudice because the prosecutor had testified that even if the offer were made, there was certainly no showing that it would have been accepted because the prosecutor had to obtain supervisory approval. I'll also point the court to a defense exhibit that was admitted at the hearing, which was an email from the prosecutor about a plea proposal made pre-trial. And in the email, the prosecutor states even before he sets forth the proposal, as I've shared with you before, to drop any of the mandatory minimums, I would have to seek and obtain supervisory approval. And the following are the terms that I would be willing to present to my office for approval. So, that was a plea proposal email that was admitted during the 2255 hearing offered by the defense. It's at docket entry 54-1. And this certainly supports the prosecutor's testimony that any offer or any proposal, and I would call it proposal, would have required supervisory approval. So, first we have the terms of this alleged mid-trial plea offer being so vague as to have not constituted a true plea offer. The court went on to discuss prejudice more. And I also take, I'm disagreeing with the fact that Mr. Garcia accepted full responsibility at his sentencing. At his sentencing, he was allowed to allecute, and his statement was, I just want to briefly apologize to my parents in your honor for all this time, and hopefully I'll learn from this. I'll be able to follow my kids later in life. And that's at docket entry 194, page 8 in the criminal proceedings. So, I think that the court had watched the trial, the court watched the defendant's testimony at the 2255 hearing, where even the defense, Garcia's testimony about whether he would have accepted this trial plea offer was quite equivocal. He might have, I probably would have, and things like that. I think the court made findings on many different issues here about the lack of prejudice, many of which the court can rely upon in affirming the district court on that issue. As to the witnesses, and there was just brief testimony from Mr. Mastos that he had difficulty with witnesses at calling the witnesses to the suppression hearing. And this was at the 2255 hearing. He said a couple of Perry's witnesses were not able to testify because they had outside matters pending, and that's the evidentiary hearing, docket entry 75, 39 to 40. What do we know from the record about what his lawyers did in an effort to secure those witnesses to come and testify at the suppression hearing that he did not waive his Miranda rights? Your Honor, there was the suppression hearing, and then there was a supplemental suppression hearing, which the court gave the new counsel additional time to call the witnesses, and he basically said he was unable to secure him. At trial, the defense submitted a defense witness list, and they named three witnesses. One of them was the owner of the trap house who did testify. The second one was this Morales Garcia who took the stand and then invoked the fifth. I'm talking about the suppression hearing though. He says that there were witnesses who would testify that he did not waive his Miranda rights. And so I guess what I'm asking is what efforts did his lawyers make in order to secure those witnesses to testify on his behalf? At the suppression hearing. As I said, at the 2255 hearing, it came up very briefly about witnesses who had outside matters pending, and that's why. Doesn't sound like they did anything to try and secure the attendance of those witnesses. If that's true, why isn't that deficient performance on his lawyer's part? Well, then I think that the court moved on to frankly would have been of any help to him because there were no affidavits submitted from these people that he said would testify, and we still don't have anything in the record. It would have helped them if they attended the suppression hearing and said I was there and he did not waive his Miranda rights. It certainly would have helped them. It would have helped in the 2255 for him to submit affidavits from these witnesses to say that they would have testified that, but that is also absent from the record. Any showing that their testimony would have been favorable to him. And I think that's why the court decided that having seen actually two witnesses at trial, in addition to Norales Garcia, there was Zustania Jimenez, and the court appointed counsel during trial for both Garcia and Jimenez, and the record indicates that they both didn't testify because they were advised by their lawyers not to testify. Documentary in the criminal case 189 and documentary 190 are both where the court ordered counsel for Norales Garcia and Zustania Jimenez, and they both ended up not testifying based on being advised by counsel at trial. So I think the record shows that his witnesses had problems, and the record also shows the lack of any showing that their testimony would have been favorable and helped him. As to Agent Salant, Agent Salant was made available to testify at the suppression hearing, the supplemental suppression hearing, but the defense opted not to call him. He did testify at trial, and the suppression issue was raised on direct appeal, and the court rejected any problems with the suppression hearing. I think that the court realized that there was no showing that he had suffered any prejudice because all the witnesses had implications of themselves, which is seen in certain parts of the record, and the court rejected his claim that there was any prejudice, and it was strategic not to call them because all of his witnesses had some involvement or worries about involvement. Daniel Garcia, Daniel Jimenez was one of the alleged co-conspirators and didn't come in to testify, but that was how she was presented and argued, but the evidence showed that she had assisted with the trap house, and she was the person on the lease of the trap house. There's nothing further. I'd ask the court for the district court's thorough order. All right, thank you, Ms. Hirsch. Mr. Cooney, you've reserved some time for rebuttal. Thank you, Your Honors. Briefly, with regard to the mid-trial plea issue, the record reflects that although Mr. Osborne's testimony was essentially, I don't even know that I could have gotten approval for a plea that I don't even remember offering, juxtaposed to making clear that there was a plea offer. There was no evidence presented by the government in trying to support the denial of the post-conviction that the U.S. Attorney's Office would not have approved the plea offer, and we know that providing the opportunity, a real opportunity for Mr. Garcia to say, yes, I want to take the plea offer obviously has to get through to the judge in the presentation, and we are very mindful of the fact that Judge Seif said, well, if I had been given this plea offer now after Mr. Garcia was convicted, I'm not sure that I would have accepted it. It just seemed too low. Those are issues that are not proper for evaluation of the prejudice pong. The prejudice pong is, should Mr. Garcia have had an opportunity to present his admission of guilt to the judge for consideration of a plea, recognizing that this is not a binding sentencing plea offer. The judge still has the opportunity to accept the plea and impose an appropriate sentence. With regard to the second issue raised or presented during the government's presentation, and that deals with the testimony that could and should have been presented at the suppression hearing, let me ask the court to focus on three aspects. One, Mr. Garcia's testimony at the suppression hearing was very clear. I need to speak with my lawyer. Agent Sleazes denies. The two agents who were aware of those conversations, Salent and Rodriguez, were never presented by the government, and the witnesses who were present who would have said, yes, he asked for his lawyer. No effort was made, and your honor, Judge Wilson asked questions. The record is pretty clear. No effort was made to bring those people, nor was there any determination we're not going to bring them because the evidence is otherwise uncontroverted that he didn't ask for counsel or something along those lines. As the Osprey court recognized, you look at a lot of different factors besides strategy. There was no strategy. Let me ask you a question, Mr. Cooney. Yes, your honor. With respect to the 2255, because that's the posture that we're in right now. Of course. Did defense have an obligation then to provide affidavits or some kind of documentary evidence as to what the testimony would have been? The answer is a yes. It's a cautionary yes in the sense that the 2255 includes Mr. Garcia's affirmance under penalty of perjury that these witnesses would have testified and would have been present had they been contacted. The effort was sufficient to satisfy that portion of the 2255 requirement in the record. You do acknowledge that normally in a 2255, whether it's a federal 2255 or a state habeas and there's new information or there's something there's an affidavit usually presented and attached and therefore it creates an issue and maybe then there's an evidentiary hearing on that. Yes, your honor. And certainly that's a good belt and suspenders imposition. It's not a requirement for sufficiency of a 2255 for purposes of getting to the stage of then being able to prove it. Bringing in a witness saying I was available. This is what I would have said. Very clear and the judge can make a determination of fact and the determination of law. For all those reasons, your honor, and I would note in closing that the trial lawyer, Mr. Lage, at the supplemental suppression hearing when it was plain that he did not and could not do anything to bring witnesses in said, your honor, I withdraw my motion for reconsideration. Essentially gave up without giving Mr. Garcia the opportunity to have those witnesses come to offer the testimony that he said and the record shows they would have offered. For all those reasons, we ask for a vacation of the order denying 2255 relief. Thank you, your honors. All right. Thank you, counsel.